UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PETER MAI,

         Plaintiff,

   v.

SUPERCELL OY,

         Defendant.

Case No.   5:20-cv-05573-EJD

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 25

Plaintiff Peter Mai brings this putative class action against Defendant Supercell Oy ("Supercell") asserting the following claims: (1) unlawful and unfair business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and (3) unjust enrichment. Compl., Dkt. No. 1. Presently before the Court is Supercell's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Def. Supercell Oy's Mot. to Dismiss ("Mot."), Dkt. No. 25. The Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' submissions, the Court GRANTS Supercell's motion to dismiss with leave to amend.

**I.    BACKGROUND**[1]

Supercell is a Finnish mobile game development company whose products include

---

[1] Supercell requests judicial notice of the games at issue, screenshots from the games, and other documents. Mot. at 6–7. Mai opposes in part. Plf.'s Opp'n to Def.'s Mot. to Dismiss ("Opp'n"), Case No.: 5:20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS
1

multiplayer battle games Brawl Stars and Clash Royale. Compl. ¶¶ 15, 33, 41. Brawl Stars and Clash Royale are free to download on Apple or Google Android devices, but players may purchase virtual in-game currency, or "gems," through the Apple App Store or Google Play using a credit card or gift card. *Id.* ¶¶ 21-24, 36, 44. Gems can be used to speed up actions in the game and to purchase "loot boxes," which the complaint describes as "randomized chances within the game to win valuable players, weapons, costumes or player appearance . . . or some other in-game item or feature that is designed to deliver additional value by enhancing game-play and providing cosmetic value." *Id.* ¶¶ 4, 19, 31-32, 36, 44, 47, 86. The loot box in Brawl Stars is called a "Brawl Box," and the loot box in Clash Royale is called a "Royal Chest." *Id.* ¶ 25. Loot boxes in both games may be purchased in varying amounts and prices. *Id.* ¶¶ 37, 44. The items in loot boxes are ranked in order of rarity and value as "Common," "Rare," "Epic," and "Legendary," with Legendary items being the rarest and therefore most valuable. *Id.* ¶¶ 31-32, 38, 44. A player purchasing a loot box does not know what item they will receive until the box is opened. *Id.* ¶ 4.

      Plaintiff Peter Mai is a California resident who has played Clash Royale since at least 2016. *Id.* ¶ 14. He estimates that he has spent over $150 to purchase gems for loot boxes in Clash Royale. *Id.* He alleges that Supercell's loot boxes function as illegal "slot machines or devices" under state law and describes how various visual and sound features of loot boxes in the games are purportedly designed to "exploit and manipulate the addictive nature of human psychology" just as slot machines and other forms of gambling do. *Id.* ¶¶ 7, 30. Mai cites various reports specifically identifying loot boxes as potentially harmful, especially to children, and asserts that various efforts to ban loot boxes are underway in Europe and elsewhere. *Id.* ¶¶ 8-11, 51-73. Essentially, he alleges that Supercell fosters gambling mechanics through its loot boxes to encourage players' spending. *See id.* ¶¶ 12-13, 39, 45-46.

---

Dkt. No. 32 at 5. Because the Court finds that it need not rely on the materials in question to rule on Supercell's motion to dismiss, the request for judicial notice is denied as moot.

Case No.: 5:20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS

2

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion.  If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

Case No.:  5:20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS

3

### B. Rule 9(b)

Consumer protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[I]n a case where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)" while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1104–05.

With respect to omissions-based fraud claims, "the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a claim involving affirmative misrepresentations.'" *Barrett v. Apple Inc.*, No. 5:20-CV04812-EJD, 2021 WL 827235, at *7 (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

### III. DISCUSSION

The Court first addresses the threshold issue of whether Mai lacks standing to bring his UCL and CLRA claims, then considers whether Mai has stated each asserted claim.

### A. Standing

Supercell contends that Mai lacks standing to bring his UCL and CLRA claims for multiple reasons. Mot. at 8–11. First, Supercell argues that Mai does not allege that he has ever played Brawl Stars and therefore cannot have been injured by the loot boxes in that game as a

Case No.: 5:20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS
4

1   result.  Constitutional standing requires that a "plaintiff must have (1) suffered an injury in fact,

2   (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

3   redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

4   Mai does not address this argument in his opposition brief.  Because the complaint contains no

5   allegations about Mai's experience with Brawl Stars and its loot boxes, the Court DISMISSES all

6   claims to the extent they are based on Brawl Stars.

7        Second, Supercell asserts that Mai has not satisfied the requirements for standing under the

8   UCL and CLRA specifically.  UCL and CLRA standing requires the plaintiff suffer "a loss or

9   deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury."

10  *Kwikset Corp. v. Sup. Ct. (Benson)*, 51 Cal. 4th 310, 322–23 (2011); *see also Meyer v. Sprint

11  Spectrum L.P.*, 45 Cal. 4th 634, 640–43 & n.3 (2009); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098,

12  1104 (9th Cir. 2013).  Supercell says that Mai received exactly what he paid real-world currency

13  for: gems to use as he pleased in Clash Royale.  That Mai chose to use his gems on loot boxes

14  does not create an economic injury because he got what he paid for.  Mot. at 8–11.

15       Courts have held that in-game currency used for loot boxes is not an economic injury

16  within the meaning of the UCL.  *See, e.g.*, *Taylor v. Apple, Inc.*, No. 20-cv-03906-RS, Dkt. No. 46

17  (N.D. Cal. Mar. 19, 2021); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457 (D. Md. 2015).

18  Significantly, another court in this District recently so ruled in *Taylor v. Apple*, a case brought by

19  Mai's counsel with substantially similar allegations and claims in the complaint (concerning a

20  variety of games available through the Apple App store, including Brawl Stars), and substantially

21  similar arguments on the subsequent motion to dismiss.[2]  *Compare* Compl., Dkt. No. 1 *and* Opp'n

22  The *Taylor* court rejected the same argument that Mai makes here comparing in-game currency to

23  gambling chips because the in-game currency could not be converted back into cash.  *Taylor*, Dkt.

24  No. 46 at 8 (citing *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.2 (9th Cir. 2018); *Mason*,

25  140 F. Supp. 3d 457).    Ultimately, the *Taylor* court found that plaintiffs lacked standing on their

---

[2] The plaintiff in *Taylor*

Case No.:  5:20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS
5

UCL claim and thus also their CLRA and unjust enrichment claims, and dismissed the entire complaint. *Id.* at 9. The Court sees no reason to depart from that conclusion.

Accordingly, the Court DISMISSES all claims for lack of standing.

### B. Failure to State a Claim

Even if Mai possessed standing, dismissal would still be warranted for failure to state a claim under Rules 12(b)(6) and 9(b). Mai's UCL, CLRA, and unjust enrichment claims are all based on the fundamental premise that the loot boxes are illegal "slot machines or devices" under California Penal Code § 330b. A "slot machine or device" is defined as:

> a machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of operation, also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value.

Cal. Penal Code § 330b(d). Subsection (f) carves out an exception: "Pinball and other amusement machines or devices, which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not included within the term slot machine or device, as defined in this section." *Id.* § 330b(f).

Supercell contends that its games are not "slot machines" because: (1) they are "predominantly games of skill"; (2) the items within loot boxes are not "things of value"; and the (3) the games are not a "machine, apparatus or device." Mot. at 12–17. Mai first denies that Supercell's games are "games of skill," but the complaint pleads to the contrary and the very nature of the games as competitive multiplayer games suggest the involvement of skill to achieve victory. *See* Compl. ¶¶ 4, 33, 35, 41-42, 76-77 (describing the competitive nature of the games and Clash Royale's listing as a strategy game in Google Play and the Apple App Store).

Case No.: 5:20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS

6

1     Next, Mai argues that it is the loot box alone that is the "slot machine," not the game, and
2 that the loot box mechanism takes no skill or strategy. Opp'n at 11–13. Other courts have
3 rejected that argument. *Mason*, 140 F. Supp. 3d at 463 ("[A]pplying Plaintiff's logic, one could
4 excise the free replay and similar chance-based functions of any number of skill-based games—
5 including pinball—and, viewing those aspects in isolation, find the games to violate section 330b.
6 In essence, Plaintiff invites the Court to read the subsection (f) exclusion out of the statute. The
7 Court declines Plaintiff's invitation."); *Taylor*, Dkt. No. 46 at 10–11 (citing *Mason*). The cases
8 that Mai cites for his contention that the loot box should be viewed in isolation from the rest of the
9 game primarily relate to an entirely different code section—California Penal Code § 319—which
10 does not require a "machine, apparatus or device," and neither those cases nor section 319 address
11 "games of skill." *Holmes v. Saunders*, 114 Cal. App. 2d 389, 390–91 (1952) (discussing illegal
12 lottery under section 319); *People v. Gonzales*, 62 Cal. App. 2d 274, 278–79 (1944) (same);
13 *People v. Hecht*, 119 Cal. App. Supp. 778, 784 (1931) (same). *Bell Gardens Bicycle Club v. Dep't
14 of Justice*, on which Mai also relies, involved an illegal jackpot "piggy-backed" onto a legal poker
15 game under section 319. 36 Cal. App. 4th 717 (1995). There, the state appellate court held that
16 the jackpot feature was completely severable from and not integral to the underlying poker game.
17 *Id.* at 744. Here, any items obtained from loot boxes can only be used within the games
18 themselves. *See* Compl. ¶¶ 4, 19, 31-32, 36, 44, 47, 86 (describing loot boxes as "randomized
19 chances within the game to win valuable players, weapons, costumes or player appearance . . . or
20 some other in-game item or feature that is designed to deliver additional value by enhancing
21 game-play and providing cosmetic value."). As discussed above, these items are not prizes that
22 can be cashed out for real-world money to be spent elsewhere—i.e., "things of value." *See supra*
23 Section III.A; *Taylor*, Dkt. No. 46 at 8–9, 11.
24     Furthermore, as Supercell points out, Mai's position is inconsistent with Mai's subsequent
25 assertion that the "machine, apparatus or device" consists of the game downloaded onto a mobile
26 phone, tablet, or computer. *Id.* at 17. Mai offers no legal support for the contention that the game
27 software itself constitutes a "machine, apparatus or device." *Contra Mason*, 140 F. Supp. 3d at

462–63 (noting absence of California precedent holding that "machine, apparatus or device" encompasses software in and of itself, and that "the most natural reading of the phrase . . . calls to mind a piece of equipment, just as the phrase 'slot machine' calls to mind a physical terminal with movable parts and flashing lights").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Supercell's motion to dismiss, with leave to amend the above deficiencies to the extent Mai can do so. Mai shall file an amended complaint by **October 4, 2021**.

**IT IS SO ORDERED.**

Dated: September 20, 2021

EDWARD J. DAVILA
United States District Judge