UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER MAI, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>SUPERCELL OY,<br><br>        Defendant. | Case No. 20-cv-05573-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 52 |

Before the Court is Defendant Supercell Oy's ("Supercell") Motion to Dismiss First Amended Complaint ("FAC"). *See* Motion to Dismiss First Amended Complaint, ECF No. 52 ("Motion"). The Court finds the Motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). ECF No. 60. For the reasons discussed below, the Court GRANTS the motion to dismiss without leave to amend and dismisses the action with prejudice.

**I.  BACKGROUND**

Plaintiffs Peter Mai ("Mai") and Diego Niño[1] ("Niño," and collectively, "Plaintiffs") allege that Supercell, a Finnish mobile video game development company, has engaged in unlawful and unfair conduct via the development, promotion, and sale of "loot boxes" in two of its games, Clash Royale and Brawl Stars. First Amended Class Action Complaint, ECF No. 47 ("FAC") ¶¶ 1-2, 9, 12. A loot box is a randomized chance within a game to win prizes, such as new or better characters, coins, spells, and buildings. *Id.* ¶¶ 40, 50. The loot boxes in Clash Royale and Brawl

---

[1] Mai did not seek the Court's leave to add Niño to this suit, as required by Federal Rule of Civil Procedure 15(a). Nonetheless, the Court will consider Mr. Niño as a plaintiff pursuant to its authority under Federal Rule of Civil Procedure 21.

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
1

Stars are available for purchase with either real-world currency or in-game virtual currency, called "gems." *Id.* ¶ 36. Loot boxes in both games may be purchased in varying amounts and prices. *Id.* ¶ 42; *see id.* ¶ 36. The loot box prizes contain randomized items, which are labeled with words such as "Common," "Rare," and "Legendary" to indicate scarcity. *Id.* ¶¶ 34, 50. The rarest items (such as "Legendary" characters, spells, and buildings in Clash Royale) are the most desirable to players, as rarer items increase the chances of winning in the game. *Id.* ¶¶ 39, 50. A player purchasing a loot box does not know what item they will receive until the box is opened. *Id.* ¶ 1.

Plaintiffs are California residents. FAC ¶ 10. Mai downloaded Clash Royale onto his Apple iPhone and estimates that he has spent over $150 in the game to purchase loot boxes. *Id.* ¶ 10. Niño downloaded Clash Royale and Brawl Stars onto his Android phone and estimates that he has spent over $1,100 to purchase loot boxes in the games. *Id.* ¶ 11. Both Clash Royale and Brawl Stars are free to download and play, but Plaintiffs allege they were each "induced" to spend money to purchase in-game loot boxes. *Id.* ¶¶ 2, 10–11. The crux of the FAC is that Supercell's loot boxes in its Clash Royale and Brawl Stars games are themselves illegal gambling games under California law. *Id.* ¶ 5. Plaintiffs further allege that loot boxes are inherently unfair because they exploit the same cognitive traps as gambling, particularly for adolescents and other vulnerable populations. *E.g.*, *id.* ¶¶ 60, 64-65, 76, 88-90, 101-103, 112, 117, 124.

Mai's original complaint asserted claims for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and unjust enrichment. *See* Class Action Complaint, ECF No. 1 ("Compl.") ¶¶ 97-125. The predicate offenses constituting the unlawful conduct were alleged violations of California Business & Professions Code §§ 19800, *et seq.*, California Penal Code §§ 330, *et seq.*, the Illegal Gambling Business Act (18 U.S.C. § 1955), and the Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367). *Id.* ¶ 102. On September 20, 2021, the Court granted Supercell's motion to dismiss the complaint with leave to amend. *See* Order Granting Motion to Dismiss (ECF No. 43) ("Prior Order"). The FAC reasserts the UCL, CLRA, and unjust enrichment claims with additional predicate offenses for the alleged

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
2

violation of California Penal Code § 337j.  FAC ¶¶ 177–229.

## II.     LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The factual allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citation omitted).  When evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *See Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

## III.    DISCUSSION

The Court first addresses the threshold issue of Plaintiffs' standing to bring their UCL and CLRA claims before considering whether Plaintiffs have asserted cognizable claims.

### A.    Standing Under the UCL

Claims 1 and 2 assert violations of, respectively, the unlawful and unfair prongs of California's UCL, which prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*.

A private person has statutory standing under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* § 17204;

*see also Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018). "A plaintiff is required to show some form of economic injury as a result of his transactions with the defendant." *Hawkins*, 906 F.3d at 768; *Kwikset Corp. v. Sup. Ct. (Benson)*, 51 Cal. 4th 310, 322–23 (2011). The original complaint alleged that Mai had been induced to spend money to purchase gems he used to purchase loot boxes. Compl. ¶ 14. The Prior Order concluded that Mai lacked standing because the purchase of virtual currency used for loot boxes was not an economic injury within the meaning of the UCL. Prior Order at 5–6.

Plaintiffs' additional allegations in the FAC amount to the conclusory statements that they "lost money and property by purchasing loot boxes" with real-world currency and virtual currency, with the virtual currency constituting lost property when used to pay for loot boxes.[2] FAC ¶ 10, *see id.* ¶ 11. Plaintiffs do not allege a deficiency in the loot boxes or virtual currency that they received in exchange for their real-world currency, or in the loot boxes they received in exchange for their virtual currency. Nor do they allege that they received a lesser amount of either type of item than they were promised. Where, as here, a party obtains exactly what they paid for, there is no cognizable economic injury for the purposes of UCL standing. *Johnson v. Mitsubishi Dig. Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010) (concluding plaintiff failed to establish economic injury for UCL standing where the record showed he received the benefit of his bargain); *Ginsberg v. Google*, 586 F. Supp. 3d 998 (N.D. Cal. 2022).

Plaintiffs argue that the benefit of the bargain analysis does not apply for two reasons. First, a material misrepresentation may be an exception to the benefit of the bargain analysis. *See id.* (citing *Kwikset*, 51 Cal. 4th at 332; *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 13 (2012)). Plaintiffs assert that Supercell made a material misrepresentation by omitting "that the transactions involving loot boxes confer or involve rights to potentially valuable prizes, when in fact these transactions constitute unlawful gambling transactions." Opp'n at 8 n.3; FAC ¶ 214.

---

[2] Plaintiffs appear to double-count their alleged injuries from purchases of loot boxes with virtual currency. They allege they lost money when they bought virtual currency, and then lost property when they spent that virtual currency on loot boxes. FAC ¶¶ 10–11. As the Court does not find any economic injury, it need not address the proper assessment of the alleged loss.

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
4

Second, the purchase of illegal or unapproved drugs or other products may constitute a cognizable economic injury regardless of the benefit of the bargain doctrine. *See* Opp'n at 8 (citing *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1086 (11th Cir. 2019); *Allergan U.S. v. Imprimis Pharm., Inc.*, 2019 U.S. Dist. LEXIS 163228, at *27 n.9 (C.D. Cal. Mar. 27, 2019); *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 48 (9th Cir. 2018)). Plaintiffs state that their claims are based on purchasing products that are prohibited by state and federal law, so that they have standing even if they received the products they paid for. *Id.* at 8 n.3; FAC ¶¶ 166, 200. Both the material misrepresentation and illegal product arguments are based on the predicate assertion that loot boxes are illegal gambling mechanisms or products. Because the Court finds that Plaintiffs have not plausibly alleged that the sale of Supercell's loot boxes constitutes illegal gambling, Plaintiffs have failed to plausibly allege either a material misrepresentation or a purchase of an illegal product. Indeed, as Supercell notes, loot box items are legal to sell in the United States. Reply at 3. Plaintiffs contest the manner of the sale—the loot box mechanism—but not the legality of the underlying products. *See Pet Food Express, Ltd. v. Applied Underwriters, Inc.*, No. 2:16-cv-01211 WBS AC, 2019 U.S. Dist. LEXIS 156198, at *18–19 (E.D. Cal. Sep. 11, 2019) ("[W]hen the product or service sold is legal, but the contract is flawed, the purchaser does not automatically satisfy the economic loss requirement [as] the court cannot infer that the plaintiff would have paid less had the defendant complied with the law.").

Thus, the Court finds that Plaintiffs' allegations are insufficient to demonstrate economic injury. This ruling accords with the decisions of two other courts in this district, in which UCL claims premised on in-app purchases of loot boxes were dismissed for lack of standing. *See Coffee v. Google LLC*, No. 20-cv-03901, 2022 WL 94986, at *9 (N.D. Cal. Jan. 10, 2022); *Taylor v. Apple, Inc.*, No. 20-cv-03906-RS, 2022 WL 35601, at *2 (N.D. Cal. Jan. 4, 2022). Accordingly, the Court GRANTS Supercell's motion to dismiss Plaintiffs' UCL claims for lack of standing.

### B. Standing Under the CLRA

Claim 3 asserts violations of the CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
5

result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639 (2009). "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" under the CLRA may bring suit. Cal. Civ. Code § 1780(a). Thus, "in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer*, 45 Cal. 4th at 641.

Plaintiffs' CLRA claim is based on Supercell's sale of virtual currency, loot boxes, and services in providing the games and selling the loot boxes, which Plaintiffs allege are "prohibited by law." FAC ¶¶ 211–214. The Court agrees with other courts in this district in holding that virtual currency is not a good or service for purposes of the CLRA. *See, e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) ("Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good or service."); *Coffee*, 2022 WL 94986, at *10 ("To the extent Plaintiffs are asking the Court to reconsider its conclusion that the purchase of virtual currency does not qualify as the purchase of a good or service under the CLRA, the Court declines to do so."). Further, as explained below, Plaintiffs have not plausibly alleged that loot boxes (and the service of providing them) are prohibited by law. And lastly, as described above, Plaintiffs do not allege facts showing that they suffered damages from the purchase of loot boxes; in fact, they received what they paid for.

Accordingly, the Court GRANTS Supercell's motion to dismiss Plaintiffs' CLRA claims for lack of standing.

### C. Failure to State a Claim

Even if Plaintiffs possessed standing, dismissal of all claims still be warranted for failure to state a claim under Rule 12(b)(6).

The claims alleged in the original complaint were based on "the fundamental premise that the loot boxes are 'illegal slot machines or devices,'" which the Court rejected. Prior Order at 6. The amended claims in the FAC rest on the same premise. Plaintiffs add dozens of allegations describing studies comparing loot boxes to gambling and discussing the cognitive effects of both

loot box and gambling mechanisms, as well as one more California Penal Code section that Plaintiffs allege Supercell violated through its sale of loot boxes. *See* FAC ¶¶ 58–168. None of the additional allegations, however, change the fundamental premise of the original complaint: the FAC's claims, at bottom, rest on the assertion that Supercell's loot boxes in Brawl Stars and Clash Royale are slot machines, so that its sale of the loot boxes constitutes an illegal gambling enterprise. *Id.* ¶¶ 180, 191–192, 214, 225–227.

Specifically, Claim 1 asserts that Supercell violates the unlawful prong of the UCL by possessing or operating games containing loot boxes in violation of various state and federal gambling statutes. FAC ¶¶ 177–186. Claim 2 asserts that Supercell violates the unfair prong of the UCL through its "illegal, immoral and unscrupulous" behavior in selling loot boxes, which "foster and encourage compulsive and addictive behavior" and "are linked to problem gambling," "conducting illegal and unlicensed gambling business including at places not suitable for gambling activities," and "promoting predatory gambling as entertainment for children and families." *Id.* ¶¶ 191–192. Claim 3 asserts that Supercell "violated the CLRA by representing to or omitting from Plaintiffs and Class members that the transactions involving loot boxes confer or involve rights to potentially valuable prizes, when in fact these transactions constitute unlawful gambling transactions that are prohibited by law." *Id.* ¶ 214. Claim 4 asserts that Supercell was "unjustly enriched as a result of the compensation it received from the marketing and sale of the unlawful and unfair loot boxes to Plaintiffs and the Class and the virtual currency it intended and reasonably and foreseeably knew was being purchased to wager on loot boxes." *Id.* ¶ 224.

Since each claim rests on the underlying allegedly unlawful or unfair conduct, the Court addresses in turn each category of conduct.

### 1. Alleged Unlawful Conduct

The FAC alleges that Supercell's loot boxes constitute unlawful gambling under California Penal Code §§ 330a, 330b, 330.1, and 337j. These sections make unlawful any "slot machine or device" or "controlled game," meaning a machine, device, or game through which a "thing of value" may be won or lost "depend[ing] upon hazard or chance" or through "any game of chance."

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
7

Cal. Penal Code §§ 330a(a), 330b(d), 330.1(f), 337j(e)(1).  The Prior Order held that the prizes in Supercell's loot boxes do not constitute things of value.  Prior Order at 7.  Plaintiffs contend that the additional allegations in the FAC, including "many allegations that the sought-after prizes have monetary, economic, objective, symbolic, aesthetic, cosmetic, hedonic, functional, competitive, personalization, social status, and entertainment value" and "[d]etailed citations to economic theory, academic research, and real-world situations involving loot boxes," create a question of fact as to whether loot box prizes are things of value.  Opp'n at 14; FAC ¶¶ 140–163.

Loot boxes offer a chance to win a virtual "item or feature to enhance gameplay or provide competitive advantage."  FAC ¶ 1.  Plaintiffs allege that loot box prizes have subjective, non-monetary value to gamers, including aesthetic value and entertainment value.  *Id.* ¶¶ 140-148.  Plaintiffs do not cite—and the Court has not found—any case holding that the subjective, non-monetary value to a gamer of a loot box item in a virtual game renders that item a "thing of value" under California gambling laws.  *See* Opp'n at 14–15.  To the contrary, as noted in in *Coffee*, "no court has found such in-game items to satisfy the thing of value requirement under California law."  2022 WL 94986, at *12; *see also Taylor*, No. 20-cv-03906-RS, Order Granting Motion to Dismiss, ECF No. 46 at 6 ("Plaintiffs insist that the loot boxes contain items that are of significant subjective value to those who play the games and purchase them.  While that undoubtedly is true, the lack of any real-world transferable value to the items takes them outside the meaning of the statute."); *Taylor*, 2022 WL 35601, at *2–3 ("Plaintiffs' claim that loot boxes are 'unlawful' remains tethered to the argument that they violate California statutory regulations of gambling devices.  Plaintiffs . . . have not offered any new substantive facts to distinguish the amended complaint, or to support reconsideration of the prior dismissal."); *Soto v. Sky Union*, LLC, 159 F. Supp. 3d 871, 880 (N.D. Ill. 2016) ("Added enjoyment simply does not have measurable worth, and it cannot be a 'thing of value' under [Cal. Penal Code] section 330b(d). . . . [P]layers who use their purchased gems to play [games of chance for in-game prizes] are not paying for the chance to win anything of measurable value.").

Plaintiffs additionally allege that game accounts and loot box prizes have monetary value

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
8

because they can be "bought and sold for real money" on "gray markets" outside of the game, and that Brawl Stars accounts and Clash Royale gems are available for sale on such exchanges. FAC ¶¶ 154 & n.104, 155. But the Ninth Circuit has held that a virtual item is not a "thing of value," even if it may be sold for real currency on an exchange, if the item provider's terms of service "prohibit . . . the sale of virtual chips for cash on a secondary market." *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.2 (9th Cir. 2018). Although the underlying statute in *Kater* was a Washington, rather than California, gambling law, courts in this district have applied *Kater*'s reasoning to analyses of the California gambling statutes at issue here. *See, e.g.*, *Coffee*, 2022 WL 94986, at *13 ("[T]his Court concludes that differences in the underlying criminal statutes do not preclude application of *Kater*'s holding that a virtual item cannot be considered a thing of value based on its alleged market value where the terms of use preclude transfer of the item."). This Court likewise relied on *Kater* in its Prior Order and once again applies its reasoning here. Taking judicial notice of Supercell's Terms of Service,[3] the Court finds that the game accounts and virtual loot box items are not "things of value" under the California gambling statutes at issue here because the Terms of Service prohibit the sale or purchase of virtual currency and virtual in-game items. ECF No. 25-14 at 14.

Accordingly, the Court concludes that Supercell's loot boxes are not illegal slot machines or controlled games under California Penal Code §§ 330a, 330b, 330.1, or 337j because they are not "things of value." The Court does not address Supercell's arguments that loot boxes are also not illegal slot machines or controlled games because they are games of skill, rather than chance, and because they are not machines or devices as defined by the statutes. Because violation of one of the above four Penal Code sections is a predicate for the alleged violations of the Gambling

---

[3] Although the FAC does not mention the Terms of Service, they are subject to judicial notice because Plaintiffs' claims are necessarily dependent on their access and use of Supercell's games, which are governed by the Terms of Service. *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018) ("[E]ven though the complaint did not 'allege or describe the contents of the surrounding pages,' it was proper to incorporate them because the claim necessarily depended on them.") (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). Plaintiffs also cite to the Terms of Service in their Opposition. Opp'n at 20.

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
9

Control Act (Cal. Bus & Prof. Code §§ 19800, *et seq.*), the Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955), and the Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367), Plaintiffs have not plausibly alleged that Supercell acted unlawfully.

To the extent Plaintiffs' UCL, CLRA, and unjust enrichment claims are based on Supercell's unlawful conduct, Supercell's motion to dismiss is GRANTED.

### 2. Alleged Unfair Conduct

Plaintiff's UCL and unjust enrichment claims are based in part on Supercell's alleged unfair conduct. FAC ¶¶ 190–192, 224. The FAC alleges that Supercell engaged in unfair and immoral conduct by "creat[ing] a gateway to problem gambling, . . . promot[ing] and reinforc[ing] addictive behavior, and market[ing] and sell[ing] gambling as entertainment to families, children, and other vulnerable populations." *Id.* ¶ 199. Plaintiffs also allege that this conduct is contrary to public policies articulated in California and federal gambling laws, and that the conduct is addictive and predatory in nature and therefore injures consumers. *See id.* ¶¶ 192–201.

"[C]ourts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017). The court in *Coffee* analyzed and rejected nearly identical allegations:

> From its inception, this suit has been premised on Plaintiffs' assertions that Loot Boxes are illegal slot machines and the Play Store is analogous to a physical casino. . . . In the FAC, Plaintiffs' claims under both prongs [of the UCL] once again expressly rely on [Defendant's] alleged promotion of illegal gambling. FAC ¶¶ 178–206. . . . Plaintiffs have added allegations to support an alternative theory that even if Loot Boxes are not illegal slot machines, [Defendant's] promotion of them is an unfair business practice because "Loot boxes develop compulsive and addictive behaviors as with gambling" and "are similar to slot machines." FAC ¶ 192. . . . There is complete overlap between Plaintiffs' unlawful prong claim and their new unfair prong claim; the only difference between the two claims is Plaintiffs' characterization of Loot Boxes as illegal or merely immoral.

2022 WL 94986, at *13.

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
10

Here, too, there is "complete overlap" between the conduct underlying Plaintiffs' allegations of Supercell's unlawful and unfair actions, and therefore Plaintiffs' UCL claim for unfairness necessarily fails. Loot boxes do not constitute unlawful gambling under California law, and "courts may not use the unfair competition law to condemn actions the Legislature permits." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999). *Cel-Tech* requires that such permission be more than the "mere failure to prohibit an activity." *Id.* There is more than a mere failure to prohibit here; the California legislature has enacted statutes outlining the bounds of unlawful gambling, and, as discussed above, Supercell's conduct does not constitute unlawful gambling under California Penal Code §§ 330a, 330b, 330.1, or 337j. As for Plaintiffs' lengthy allegations citing to studies about the harms of loot boxes, "it is not this Court's role to 'apply purely subjective notions of fairness' under the UCL." *Coffee*, 2022 WL 94986, at *14 (quoting *Cel-Tech*, 20 Cal. 4th at 184). "If plaintiffs' allegations regarding the harmful [e]ffects of loot boxes are accurate, the public interest likely lies in seeking legislative remedies." *Id.* (quoting *Taylor*, 2022 WL 35601, at *3).

Accordingly, Plaintiffs have not plausibly alleged that Supercell's conduct is unfair in violation of the UCL. As Plaintiffs' unjust enrichment claim is based on the same alleged unfair conduct, it too is subject to dismissal. Thus, to the extent Plaintiffs' claims are based on the alleged unfairness of Supercell's conduct with respect to the loot boxes, Supercell's motion to dismiss is GRANTED.

### D. Leave to Amend

In light of the Court's findings that (1) Supercell's loot boxes are neither illegal slot machines nor controlled games and (2) Plaintiffs cannot state a claim based on the allegedly unfair effects of the loot boxes, the Court concludes that amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052; *see also Coffee*, 2022 WL 94986, at *14; *Taylor*, 2022 WL 35601, at *3. Accordingly, the Court dismisses the FAC without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Supercell's motion to dismiss the FAC is GRANTED

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC
11

1  WITHOUT LEAVE TO AMEND.  The action is DISMISSED WITH PREJUDICE.  Accordingly,

2  a separate judgment will enter, and the Clerk is directed to close the file.

3  **IT IS SO ORDERED.**

4  Dated: January 3, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 20-cv-05573-EJD
ORDER GRANTING MOT. TO DISMISS FAC

12